Okay, we'll now go to Renato Manuel Da Costa Ponta-Garcia versus Attorney General. Good morning, may it please the Court. My name is Michael P. DiRamondo. I'm the attorney for the appellant, Renato Ponta-Garcia. It's a case of first impression in this Court. It basically deals with the reinstatement provisions of the Immigration and Nationality Act and specifically the changes that were made by Ira Ira and the Attorney General's interpretation of the regulations in ACFR 241.8. Before we even get to that, if we ever get to that, what is going on here? First of all, what is your client's legal status here, if any? I was going to deal with that first, Your Honor, because Is he a lawful permanent resident? Is he an aggravated felon? What is he? Is he detained also? He's detained. He's presently detained. I thought he was getting out in June of 2007. Oh, we have a habeas pending for over a year now in Middle District and it's still pending. He's been detained for over a year. As an immigration detainee? Yes. Yes, Your Honor. He's at York Detention Facility. He came in as a lawful permanent resident, Your Honor, in 1978 with his family. It appears that they left the country for a year, over a year, and went back to Bermuda, and they abandoned their permanent residency. Okay, so you agree that they abandoned their permanent. But then he got a green card. Yes. Now, are green cards valid forever? No. At one time, Your Honor, they weren't forever. Then the Immigration Service changed it to a 10-year period. But he applied in 1990, in October of 1990, on an I-90 for a green card, a renewal of a green card, and he was approved and he got a green card. Yes, but the government says that he lied on that application. He didn't lie, Your Honor, and that's one of the reasons we put in the supplemental record. And if you look at supplemental appendix page 4, you know, he put in all the proper information. He put his name in. He put his date of birth. He put the correct A number in. I worked for the service for seven years, and I've been doing this for over 30 years, and they check these. They don't just hand out renewals of green cards. I don't know what the lie was. I think the lie was where he answers, the date you were admitted or adjusted to permanent resident status, and he says 1-15-78. Well, that is the day he was admitted with his family when he was 9 years old. That's correct, Judge Barry. So that's not a lie, and I think that's what they're pointing to. I don't think he lied, Your Honor, and he was approved and he was given a new green card by the service. Yeah, and it says here, nobody's pointing this out, but original, I think it's I-151. Is that the original green card? That's correct, yes. Was seen and destroyed, and that's signed by the immigration officer. Yes. So he had a green card. Then he gets a new one based on this, this, and I don't know where the lie is. And, Judge Barry, they do a computer check. The government representative is going to tell us. They do a computer check. They pull the file. They don't just give green cards out, renewals, because if you do have a prior deportation order, it would lead to a denial of this form. Then he travels to Canada with the whole family. Before he travels, when he travels to Canada, and see, we don't know any of this stuff. It's like a puzzle we're trying to put together. When he travels to Canada, they say, the government says, he deported, departed, pursuant to an order of removal. He still thought he was a government member. But he went to a wedding. I mean, is that departing pursuant to an order of removal? Well, there's an old outstanding order, which is clearly in contention here. It's a 1987 order. Was it invalidated or wasn't it? I don't actually know, Your Honor. Who knows that? The record is unclear about that. The First Circuit decision with respect to his brother, Helder. It just says what his brothers told them. Yes. I mean, I don't. There has to be a document. I can't understand. I could not find the district court decision with respect to that. Okay. Let me ask you another question on another thing. What effect, if any, does his substantial criminal history have on this case? He has a very substantial criminal history. It doesn't have any effect right now. Well, he may be an aggregated felon. But they haven't determined that. All they've done is reinstated the prior order. And I have to say, they gave him no hearing. They didn't allow him to introduce any evidence. He didn't sign the affidavit, which I believe is incorrect. And Judge Barry, what he's about to say about the trip, he makes a trip to Canada in 1992 for this wedding. He comes back across the Peace Bridge to Buffalo and is inspected and admitted with the new green card. Because he had a green card. But they checked the text system, Your Honor. They checked it again. And if he had a prior order, they would have stopped him at the border at that point. So he goes through two processes and is, one, granted a new green card, and, two, is readmitted as a returning resident. What effect does that have? Yeah, let's go to what was before us. It's like being in the district court. I love it. Sorry, I didn't say that. You did say that. The moving figure. What effect does that have on what's before us now, which is the reinstatement of the prior removal order? Major effect, Judge Salobro. Major effect. Because they have to show three things. One, they have to show that there's a prior order. There's some order. It's in question here. I'm not sure. No, there isn't. Let's assume it is. Okay. Let's assume it is. He's the same person. It's Ponta Garcia, same person. Did he unlawfully enter the United States again? They can't prove that, and they've never proved that. And I would point the court to the warrant. You know, he was arrested again in 1995, and there's a warrant in the record. The one, the girlfriend? Yes, his common-law wife, who I believe is in the court today. But I point the court to JA-17, Joint Appendix 17. At the bottom it says, documentation submitted and accepted as proof of departure, subject to be put on proceedings anew. You know why they never? They had him arrested on March 1st of 1995 on the warrant, and I have something else to add. You know why they never reinstated proceedings? Because he entered legally in 1992 from Canada. He entered legally with a green card that they probably made a mistake. They probably issued him this green card in error. They didn't realize that there was a prior order, or it was vacated. I don't have a clear indication of that. Now, this might be interesting. I don't know if you know the answer to this, but his whole family was subject to this removal order. Have any of them ever gone back? I mean, the mother got an adjustment of status. The brother, the First Circuit threw it out as untimely petition. Where is the brother? I think he's still here. He's still here. Is he in jail? No, they put the mother and the brother. The sister's here. Everybody's here. The father was a. They put the mother and brother under new proceedings. Yeah, that's right. And the mother got granted adjustment status in February of 08. Helder, who they reinstated, and the First Circuit threw the case out, they gave him new proceedings also. That's right. So nobody's ever gone back on this old removal order. What about the father? Where's the father? I don't know the status of the father, but I have another document that's not in the record, and I found it yesterday going through the FOIA. There was a 213. I asked the court. Oh, you mean the FOIA? That FOIA, the Freedom of Information. And I. The Freedom of Information request. I point the court to JA-15, which is the I-213, which is a record of the portable alien, and that record of the portable alien says on page 15 that subject and his family entered the U.S. on April 27, 1992, near Buffalo, New York, without admission or parole, by an immigration officer and the permission of the Attorney General. Subject is eligible for reinstatement of his previous order of removal under Section 241A5 of the Immigration Nationality Act. But there's a prior I-213. The government refuses to put in the old record. I tried to expand the record. The court granted me this motion. This March 1, 1995, I-213, when he was rearrested on the warrant, listen to what this states, reentered April 27, 1992, from Canada by car. At that time, subject in possession of I-151 resident alien card. Card obtained via remote adjudication of I-90 of Buffalo. The card is valid. However, issued while subject under a final order of deport. I asked that I be allowed to submit this as an expansion of the record. Then you had two weeks later, you have on 3-16-95, you've got the girlfriend saying he had departed by car on 4-23-92 via Buffalo. Interestingly, a week and a half later, the Connecticut court dismissed the case. So we're trying to find out what was before the Connecticut court. We really don't know. But it may have been evidence that he had deported, departed voluntarily pursuant to implicit removal order. In the first place, you cannot hand us a document. If you want to have us see the document, you'll have to make a motion, and then we will see the document. We'll hear the government's response. We don't just take documents. We're not a district court. I'm not offering it today. I'm asking that the court allow this as part of my motion to supplement the record. Well, you'll have to do this all in writing so there's a record of everything. There seems to be a record of everything except what happened in Connecticut, and we'll have to ask the government because I don't understand how something can be. We did find a reference to something, but we don't know what happened. I could not locate that record, Your Honor. But I would state that one of the problems with this whole reinstatement process is that the government only wants to put in the administrative record from the reinstatement process, which is very small. They don't want to put in the prior administrative record, which is very, very important to determining whether or not they have met the three-prong test under 241.8. Well, we know that the first two prongs are taken care of, so it's only the third prong. Why shouldn't the government be able to reinstate the prior order? Well, in this case, Your Honor, because they can't prove that he unlawfully entered the United States. But I would also claim that the court. Whose burden is that to prove? That's the government's burden, and he has not offered a hearing. The Attorney General has now taken out a hearing before an immigration judge, which was in the prior regulations. He is not allowed to submit any evidence. He is not allowed an attorney. He is. He is. No, Judge Barry, I beg to differ. He's allowed. The immigration officer shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession. Then the immigration officer shall attempt to verify an alien's claim, if any, that he was lawfully admitted. So the burden, it seems to me, the burden of production shifts to the government once the alien says something. And the question is, what did he say here? What did your client say to the immigration officer on the reinstatement? Judge Barry, he said he had a green card, and he reentered in 1992 with the green card coming from Canada to the United States. Okay. The I-213, that's April 2nd, 2007, begs to differ with that. It says that he entered illegally, but they have no proof of that. Is there any reason, any evidence yet of the fact that the 1987 order was ever invalidated? The only reference is in that First Circuit decision and the fact that the mother and the brother held her issued new proceedings. And, again, I point the court to that warrant where it says. It's never been removed pursuant to the removal order. That's why I wonder if that isn't a little bit somewhat evidential of the fact that at least there is some possibility that it's no longer valid. He may have future problems. I was just going to ask you that. Can he be removed because of all his criminal background? He may have future problems. The government may claim he's an aggravated felon. They haven't yet, which I found surprising. Clearly, but that's not part of the issue before this court. We're claiming that the reinstatement is invalid. It never should have been reinstated. I do claim that the regulations are invalid. The court doesn't have to reach that. I think there are due process violations here. What prompted them to go with the reinstatement order after 15 years? 15 years out of the blue comes his reinstatement. I think all the criminal records came in when the officer was trying to identify, to assure that this was the right person. That's when all the criminal stuff came in. It doesn't look to me, I see nothing in the record that out of the blue, this reinstatement order should have been the notice of reinstatement to warrant noticing the reinstatement. Judge, Barry's questions really go to the government, I would think. Maybe he knows. I don't know why after 15 years, Your Honor, that they waited. I think it's because they had him in custody, and this was the easiest way for them to get rid of him at this point, and that's wrong. Why did they have him in custody? Because he finished his sentence with respect to his criminal conviction. He was turned over to ICE and put in ICE custody. Okay. Now, there is another member of this panel who hasn't had a chance to ask a question. My apologies. I think you've been asked a lot of questions and answered them as best you can. I have some of the same questions. I have two minutes for rebuttal. Thank you. Yes, we'll get to him, and we'll ask the government lawyer to come up, Mr. Oliveri, and be subjected to Judge Barry's barrage. Actually, it was 20 years later when the government noticed its intent to reinstate the removal. Wait till he tells us who he is. Oh, sorry. You didn't expect this. Go ahead. My name is Andrew Oliveri. On behalf of the Respondent, the Attorney General, Michael B. McCasey. Judge Barry, I want to address your question. First, 20 years after the order of removal, 20 years later, out of the blue, apparently, they seek to reinstate the removal. He's not out of the blue. He's in jail, and they get him in state detention. As counsel for Petitioner pointed out, it was brought to their attention after he was released from state custody, and they put him in ICE detention and initiated procedures to reinstate the removal order. This wasn't that they just decided to, after 20 years, go after an alien. They had a reason to, after he had served his criminal sentence. They initiated reinstatement proceedings. How long a period of time passed from the time that he reentered the U.S. until his conviction? You had a bunch of convictions. There were a number of convictions. I don't have them memorized. The first one where he had to go to prison. There was a number of convictions in the 90s, early 90s. So if he hadn't been convicted, probably no reinstatement would have ever been issued. I can't speculate as to whether or not. He was convicted in 96 and sentenced to 20 years imprisonment, which was suspended to 20 years probation. Then in Rhode Island state court he was convicted of leaving the scene of an accident with injury. I don't think that would be an aggravated felony. Well, I don't know. He asked us which convictions. He has a rap sheet which lists state court charges of credit card fraud in 1989. His big one was 19, what was the money laundering in 2000? That was in 2004, for which he received a suspended sentence. No wonder they. He got 42 months in jail. The CTR in April 19, 2005. I think he got 42 months in there. Is the government now saying that the green card which was issued that he came across the border with was invalid? What's your position on that? Because he was not a lawful permanent resident when he renewed his card and he concealed a material fact on that application. What fact? Question 17, it says, please list any times outside of the United States for longer than one year. He responded, none, which is incorrect considering the fact that he and his family departed the United States and returned to Bermuda for a length of over one year, which is why the LPR says. How old was he then? I believe 9 or 10. However, the fact of the matter is there is no intent to violate immigration laws. Simple violation. Would you say you use the word fraud in your brief? Is that fraud? He misrepresented a material fact in getting his green card renewed. We respectfully state that this court lacks jurisdiction over that question because he did not present that issue to the ICE officers. And as Judge Berry pointed out, he does have the opportunity to present evidence challenging any part of the determination that reinstatement is valid. He has the opportunity to challenge the identity, the fact that a removal order is in existence, and that he illegally reentered. Why can't the government come up with some evidence as to what happened in that Connecticut proceeding? I mean, was that before a federal judicial officer was a judge? The alleged district court decision. And you think it never happened? We have the docket sheets. We know it happened. That invalidated the 1987 decision, the Judge Guattrito? No. No. No. The 1988. The Connecticut. That judge. Yes. The district court. Yes. I mean, we don't have anything about that. That is correct. Why is that? I mean, that's within the government's possession, isn't it? We have the docket sheets. I have the docket sheets. For the district court in Connecticut. Yes. Yes. Before Judge Guattrito. Do you have the docket sheets? No, I don't. We don't have any of that evidence. Would you like me to make a copy and give you the docket sheets? They're obtainable online. Well, respectfully, Your Honor, I did look, and I didn't find anything. Again, it's not our burden. Petitioner raises this before this court. Wait a minute. Wait a minute. I don't know about burden. All I know is obviously there's an issue in this case with respect to what happened in Connecticut because the statement is made that that judge said that the reinstatement was invalid or something like that. And how can the government not tell us or not provide us with what happened? It's a federal court. Well, there's two cases. The first is that the First Circuit case where Petitioner alleges claim that the reinstatement is invalid because Judge Guattrito. But if you read that decision, it does not say that the reinstatement or that the 1987 order was invalid. It says he says it. Right. And they specifically point out they were given no evidence. But I have the docket sheets from Judge Guattrito's case. He granted a stay of deportation of appellant, right? Well, you don't know because you don't have them. We don't have that evidence. And then just three weeks later, he dismissed the case on the government's notice of following. The government dismissed the case. So I don't know what's going on. Quite frankly, that isn't in the record, Your Honor. It wasn't in Petitioner's supplement to the record. When was the Petitioner supposed to raise that before the ICE officer? The ICE officer, yes. He is notified of an intent to reinstate. He is given the opportunity to challenge that reinstatement and submit evidence challenging that. So he should have said that Judge Guattrito in Connecticut set aside this. Yes, he absolutely should have. And if he – you know, he may not be carrying the decision on him. That would be – but he could have said, I have the decision. I can provide it for you. And the regulations clearly state – But the U.S. attorney is listed here. Now, that's within the – I mean, his name is Schumann. He's in Hartford, Connecticut. I mean, how can the government not communicate with us as to what happened? If he claimed that, the regs say the immigration officer shall attempt to verify an alien's claim. That is correct. And he did not assert that fact because if you read the statement that he gives, there's a statement typed up by the immigration officer as to reflecting what he stated, and he states that he self-deported in 1992 and that he illegally reentered. And then there's a handwritten statement where he discusses his desire to apply for asylum based on the fact that he fears persecution in Portugal. In Portugal, one of the real terrorist countries. Go ahead. But at no point in that statement does he ever state that he is a lawful permanent resident or that he entered legally or that the 1987 order was invalidated. He did not present this evidence to the ICE officers. Do we know that really? Yes. Where the ICE officer says self-deported and all that stuff. That's his characterization of what happened, right? That's a summary of the statement that Ponte Garcia gave to the ICE officer. Well, I don't think that Ponte Garcia, I mean, he may be very well versed in these matters, use that terminology. I mean, that's ICE terminology, self-deported, under, invalid, you know, order of removal. I don't know what he would have said. He probably said I went to Canada for a wedding. No, they got me. They shouldn't have gotten me. I had a green card. He probably said something. We don't know. Well, if he had said that he had a green card, that would have been a basis for the ICE officer to further investigate as to whether or not reinstatement would have been appropriate. Had he done so, the regulations required that the ICE officer investigate that claim. He did not make that claim, and he did not present any evidence that he was, in fact, a lawful permanent resident, which he is not. He didn't say he had a green card, as far as we know. There is nothing in the record to suggest that he ever said that, especially because he has a handwritten statement accompanying the statement that was typed up by the ICE officer, and that would have been, I mean, if he honestly believed that he entered legally, that would have been an opportunity for him to say I entered legally. Reinstatement isn't valid. What was his reason for saying that he was, he didn't illegally reenter? Did he say anything? He did not say it. And again, the statement that was prepared by the ICE officers, he agreed that he entered illegally. He stated that he entered without inspection. We have to find a remedy. I mean, you know, this is all very nice, but at the end of the day, we have to decide what to do. Now, it seems to me, what do you want us to do? Let me ask you before I tell you what I think we can do. The government believes that you should affirm the decision below and allow ICE to reinstate the removal order issued. Okay. Now, but we have all these problems with the record. We could remand the case to DHS and give him an opportunity to submit the evidence, to submit, to rebut the government's evidence. Why shouldn't we do that? Well, with respect, because he already had the opportunity to do so, and Congress, in enacting this reinstatement provision, was very concerned by the abuses aliens were doing to prevent their ultimate removal from the United States. And in doing so, they created a system where if an alien has already been ordered removed, which in this case has happened. Well, there's a question, though, as to what Judge Quattrito did with that order. I mean, we don't know because— But the ICE officer has the ability to investigate that, and if there is evidence that, in fact, the 1987 removal order was invalidated, then reinstatement cannot go forward. What about, you know, the First Circuit dealt with these virtually identical allegations that were made for the first time before it. Yes. And it found that his petition in which these allegations were made was untimely, and so they did not have jurisdiction over the petition. But they recited these allegations, and then they said, we encourage the respondent to reexamine the case with care. Did that happen? Would you agree that given these same contentions, this case should be sent back for the same careful determination? No. With respect, again, the First Circuit in that decision simply suggested that the government reexamine on its own basis. The First Circuit was troubled by these allegations. Yes, but, again, he had the opportunity to raise these allegations. So did his brother. We don't know. It seems fairly clear here from the First Circuit's opinion that the representations were made before the First Circuit. Correct. But he had the opportunity to present this to ICE. He had the opportunity. All right. Okay. Let me tell you another circuit and see how you. The Ninth Circuit had a reinstatement case involving disputed facts, and what they did was to transfer the case to the district court, quote, pursuant to 28 U.S.C. Section 2347.3, which authorizes such a transfer, I'm quoting from the Ninth Circuit, such a transfer when an agency has not held a hearing before taking the complaint of action and when a hearing is not required by law and a genuine issue of material fact is presented. That case is Gallo-Alvarez v. Ashcroft, Ninth Circuit, 2001. Why shouldn't we do what the Ninth Circuit did? We can either send it to DHS, remand it, or send it to the district court. Pretty hard for us, given all these disputed facts  that may be in the record, may that you haven't found Schumann, the U.S. attorney who was there before Judge Suotrito. Why shouldn't we have somebody who can take facts? We can't take facts. Well, with respect, Your Honor, ICE can take facts, and there was the opportunity for petitioners. But there was no hearing, isn't that right? There was a hearing. He simply presented no evidence. It's not a hearing. No. First, and that gets on to the regulations. He is not entitled to a hearing before an immigration officer. Well, okay. Maybe not before an ALJ, but somebody's got to give him a hearing. He had an opportunity to present evidence before an ICE officer. That is the only administrative procedure that he is entitled to by law, that an immigration officer consider the evidence that he presents. He did not present any evidence challenging the determination by ICE. Let's assume he made some sort of allegation or just arguenda. You say in your brief that ICE has the necessary expertise to determine the validity of plaintiff's assertions. That is correct. So let's assume he said, just arguenda, maybe he did, that the removal order was invalidated, or I entered with a green card. We have a green. He did enter with a green card. He got a green card. He had a green card. We don't know if he entered with it. You say it was obtained fraudulently. I'm not so quick to agree with that, but that's not for me to decide. But you, as you say in your brief, have the necessary expertise to determine the validity of these allegations. That is correct. I see that my time is up. Oh, no. You have time to answer. And I was going to answer your question, but I just wanted to. Oh, yeah. We'll give you as much time as we think you need. It's our option. Go ahead. ICE does have the necessary expertise to evaluate these claims. They are, as the Supreme Court held in Marcello, they are, in fact, neutral, and they are not biased. They have the ability to investigate these claims. And had he raised these claims, they would have investigated, as you cited the regulations were saying. But you're assuming that. You're speculating that they would have done that. We don't know. No, the regulations state that they shall. Yeah, all right. And that's what I'm saying. And we don't know what happened. And if the record reflects that he did say it, and for some reason ICE did not, this court can review that. But because he did not do so. You're saying he waived it because of the grace. He waived it. But we can't take evidence. We can't, for example, he can't submit to us an affidavit saying I really did say. That is correct. That I had a valid, that I did have a valid green card. That is correct. And that is why this court has the administrative exhaustion requirement stating that in claims that can be resolved by the agency, for this court to have jurisdiction over that claim, the alien must present them to the agency for them to consider in the first instance. Are you saying that we don't have the authority to remand it to DHS so that it can use its expertise to find out precisely what happened? That is correct. We don't have the jurisdiction, and we shouldn't do it. You don't have the jurisdiction to consider the claim because he failed to exhaust his administrative remedies. Based on the one handwritten letter that says he doesn't want to go back to Portugal. Based on the fact that he did not challenge the allegations in the reinstatement provision. He did not, he had the opportunity to challenge them by presenting evidence, making a statement, and he did not do so. He deprived ICE of the opportunity to investigate this in the first instance. Tell me why again. Why did he deprive them? Why? Because he did not present the evidence that would allow them to fully evaluate his claim. So he did not, he did not tell them that. I have a green card. I have a green card. He did not tell them the removal order had been invalidated. That is correct. Okay. And that's based only on the fact that he has a handwritten letter. And there's also. And he mentions only he doesn't want to go back to Portugal because he's afraid of anti-American bias, right? And there's also the summary of his statement given to the ICE officer. Which is made by the ICE officer. Which is made by the ICE officer. Yes, but that is no different than any type of criminal proceedings where they type up a statement of a defendant. The fact that it was typed. As an old criminal lawyer, I do remember 302s are kept pretty bare bones. But if he had actually raised the green card issue, it would have been noted in the statement and an investigation would have been done. Okay. You're saying that because they should have done that, we can assume that it was done. It's not that they should have. It's that they are required to by regulation. Okay. That should. And you're saying that because it says shall, we should assume that it happened. Well, there is no evidence to the contrary that they ignored. Why shouldn't, what's wrong with us taking a procedure that will get the evidence into the record? I mean, why shouldn't we as a court of appeals say, you know, there's really a question as to what happened. And therefore, we can use one of various options to have the facts. I mean, how many cases like this come up? I've been on this court for 29 and a half years, and I haven't seen another one like this. So what's so wrong about our taking an action that will clarify the record? That's all. I mean, anyway, you can deport him because of all these criminal things probably. Well, with respect to whether or not he can be ordered removed in a 1229A hearing, the point, though, is that Congress made an explicit policy decision not to have to do that whole basis when an alien has already been. And every rule has an exception, right? Yes. Okay. Can I ask a question? Perhaps you know the answer. Why hasn't any other member of this family ever been removed under that removal order, or have they? Well, what has happened to his family is ultimately irrelevant. That isn't my question. My question is, how come it was never – have any of them been removed pursuant to that removal order? Well, my understanding is that the family – well, I don't know with respect to any of the other family members. Because it seems as if they're all still here for one reason or another. ICE has the discretion to determine how it proceeds in each individual case. Well, when a whole family is still here, when the whole family – and I'm exaggerating a little bit – was ordered removed 20-some-odd years ago, and they're all still here, it may lend a little bit of support, inferentially at least, to the fact that removal order may have been invalidated. Well, first of all, Congress has never put a statute of limitations on the ability to effectuate a removal order. And to say that because they haven't been removed in 20 years somehow suggests that it's invalid would be encouraging. It's curious. It's curious. That's all. It's curious. I mean, it must be. You told me that this criminal record doesn't matter. But my guess is that the criminal record is precisely the impetus for trying to apply the removal order to him. And these other people probably don't have a criminal record. Well, the criminal record, again, is the basis for why he came to their attention. The criminal record is not relevant to whether or not he is valid. But we're just trying to fill in the gaps. And you're asking us to make suppositions. And you're a good-loving government lawyer. You can go back and say I told them everything you told me to tell them. I follow the party line. But the party's changing next week. But that's another question. But I can't understand why you are so resistant to our ascertaining precisely what the facts are in this case. Well, with all due respect, Your Honor, it's because he had the opportunity to do so in the first place. Okay. I think we understand your position. But you can tell them you did it. You did well. Thank you, Your Honor. Are you sure you want to use your rebuttal time? Yes, I do, Your Honor. I just want to state that's the whole problem, Your Honor, with the reinstatement process. Under the old process before IG. We're not going to knock out the reinstatement process. Did your client raise this issue that he had a green card when he came back across the border? Judge Sell, he always thought he was a permanent resident. He never thought differently. And he didn't write that affidavit that he refused to sign. The government wrote that. He refused to sign it. He never thought he left voluntarily. He never thought he self-deported. He always thought he was a permanent resident. But they issued him a new green card. At the time I crossed the border, I had a green card. Yes. He sent that to the ICE officer. And I believe it is in the government's possession. This I-213 I told the court about is in the government's possession. I think they have to come forward with that because it specifically says he had a valid green card. That's exculpatory evidence with respect to this reinstatement process. Ever said to the ICE officers that what your forms show? I didn't hear the question. Your forms show that your client told the ICE officer, when I came back across the border from Canada, I had a valid green card. Absolutely, Your Honor. It says in black and white I had a valid I-551, which is a green card. And it was issued by the former Immigration and Naturalization Service. And that's in their file. It should have been presented to this court. It should have been part of the joint amendments. Okay. So what is this document you got through FOIA? It's another I-213, Your Honor. It's called Record of Deportable Alien. And it will make it part of a new motion. Is that part of this hearing that the ICE officer had? There's no hearing, Your Honor. It's an interview. And you sit down. They sit down kind of like a student who's expelled. You have no right to a hearing before. No right to an attorney. And anything he has on him he could show them. But he just came from jail. He's turned over to ICE. He has no documentation on him. But this is in their record. They're confirming that he had a valid green card when he came across the border. That's not presented to this court. Is that the thing that was presumably turned to them and they tore it up or something? I don't know what was torn. Destroyed, yes. Yeah. An older one. Well, I think you should make a motion and expand your motion, and we'll decide it. I will. And I thank the court for its time. I have one more question. Yes, Your Honor. Let's assume you get everything you're – well, you're not going to. We're not going to upset – find everything unconstituted. Let's assume we were to find a reason to send it back to wherever. To someone. To somebody. To find out what really happened. And let's assume that everything you say is correct. At the end of the day, he is an aggravated felon, isn't he? I may have relief from that, Your Honor. He has a common-law wife, Jennifer Mitchell. If he actually finalizes that marriage – The one who got him into trouble with that affidavit? Yes, yes. And he could actually apply for adjustment of status with an I-601 waiver. An I-601 waiver will basically waive aggravated felonies, but the service has to find that he was not a permanent resident at the time. So there's a whole issue now whether he was a permanent resident, when did he lose his permanent residency. So, yes, at the end of the day, he could still be deported, but at the end of the day, I could still win that based on adjustment of status to Jennifer Mitchell and an I-601 waiver. I would ask that this Court send this back to either an immigration judge or the district court for a fact-finding. To send it back to DHS, to an ICE officer, I'm not going to have any proper hearing again. I'm just not. I think it will be a violation of his due process, and that's why, yes. Well, wait a minute. He doesn't – I mean, what kind of due process rights? Well, I don't want to get into that. I mean, if you're challenging the reinstatement, he's already had a hearing, a due process hearing. But – When they – in the order of – Under the old process, there was actually a transcript of the proceedings. The evidence would come back before this Court. There's nothing here. You want us to send it back to an ALJ? Is that what you said? To an immigration judge or to a federal district court judge so I can have a hearing. I was just going to ask that question. I'm sorry, Judge Settle? What's your best authority for allowing us to do this? I cite that in the brief. It's Section 240 of the Act, which basically says an immigration judge shall determine inadmissibility or deportability. And it's the only person that can do such a thing, not an immigration officer. But that was – That's rejected there, right? That was determined many years ago when the order of removal was entered. That's the first order of removal. But now they're saying that he deported himself and he comes back and he's inadmissible based on the prior – nobody's ever determined that. And I'm saying that that should really go to an immigration judge. I got reversed by the Third Circuit many years ago. Many times. No, I didn't. Not many times. For remanding something to some place from which it hadn't come. And they slapped me very hard on that one. So I don't know. Can we just pluck some place out of the air and send it there? Well, I would then ask you to file the Ninth Circuit case and send it back to the district court for a fact-finding. It didn't come from the district court. Yeah, I don't know how the Ninth Circuit did that. We'd have to go into that. Okay. Thank you very much for your time. Thank you.